# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 07-111V
**Filed: March 6, 2015**

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * | | UNPUBLISHED |
| KELLY BUTLAND, as the Legal  * | | |
| Representative of Her Minor Daughter, L.B., * | | |
| * | | Special Master Hamilton-Fieldman |
| Petitioner, * | | |
| * | | Joint Stipulation on Damages; |
| v. * | | Measles-Mumps-Rubella ("MMR") |
| * | | Vaccine; Opsoclonus Myoclonus |
| SECRETARY OF HEALTH * | | Syndrome ("OMS"). |
| AND HUMAN SERVICES, * | | |
| * | | |
| Respondent. * | | |
| * * * * * * * * * * * * * * * | | |

Curtis Webb, Webb, Webb, & Guerry, Twin Falls, Idaho, for Petitioner.
Traci Patton, United States Department of Justice, Washington, D.C., for Respondent.

## DECISION[1]

On February 16, 2007, Kelly Butland ("Petitioner") filed a petition on behalf of her minor daughter, L.B., pursuant to the National Vaccine Injury Compensation Program.[2] 42 U.S.C. §§ 300aa-1 to -34 (2006). Petitioner alleged that, as a result of the administration of measles-mumps rubella ("MMR") and Varicella vaccines on December 22, 2004, L.B. suffered from Opsoclonus Myoclonus syndrome ("OMS"). On June 19, 2009, the previously-assigned special master ruled that Petitioner is entitled to compensation.

---

[1] Because this decision contains a reasoned explanation for the undersigned's action in this case, the undersigned intends to post this ruling on the website of the United States Court of Federal Claims, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2006)). As provided by Vaccine Rule 18(b), each party has 14 days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b).

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-1 to -34 (2006) (Vaccine Act or the Act). All citations in this decision to individual sections of the Vaccine Act are to 42 U.S.C.A. § 300aa.

1

On March 4, 2015, the parties filed a stipulation regarding the amount of damages to be awarded to Petitioner. Respondent continues to maintain her contrary position, but will not seek review of the undersigned's determination of entitlement upon its memorialization as a reviewable decision. The parties thus agree to the joint stipulation, attached hereto as Appendix A. The undersigned finds the stipulation reasonable and adopts it as the decision of the Court in awarding damages, on the terms set forth therein.

The parties stipulate that Petitioner shall receive the following compensation:

**A lump sum of $437,534.71, which amount represents compensation for lost future earnings and pain and suffering ($425,000.00) and first year life care expenses ($12,534.71), in the form of a check payable to Petitioner as guardian/conservator of the estate of L.B. for the benefit of L.B. No payment shall be made until Petitioner provides Respondent with documentation establishing that she has been appointed as the guardian/conservator of L.B.'s estate;**

**A lump sum of $6,281.00, which amount represents compensation for past unreimbursable expenses, in the form of a check payable to Petitioner, Kelly Butland;**

**A lump sum of $13,034.00, which amount represents reimbursement of a lien for services provided to L.B., in the form of a check payable jointly to Petitioner and**

**Holloway Credit Solutions, LLC**
**P.O. Box 230609**
**Montgomery, AL 36123-5609**
**Attn: Ms. Lang**

**Petitioner agrees to endorse the check to Holloway Credit Solutions, LLC.**

**A lump sum of $6,210.00, which amount represents reimbursement of a lien for services provided to L.B., in the form of a check payable jointly to Petitioner and**

**Children's Hospital**
**P.O. Box 2252**
**Birmingham, AL 35246-0095**
**Medical Reference No. 1237366**

**Petitioner agrees to endorse the check to Children's Hospital.**

**An amount sufficient to purchase the annuity contract described in paragraph 10 of the Stipulation, paid to the life insurance company from which the annuity will be purchased.**

Stipulation ¶ 8.

The undersigned approves the requested amount for Petitioner's compensation. Accordingly, an award should be made consistent with the stipulation.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court **SHALL ENTER JUDGMENT** in accordance with the terms of the parties' stipulation.[3]

**IT IS SO ORDERED.**

s/ Lisa Hamilton-Fieldman
Lisa Hamilton-Fieldman
Special Master

---

[3] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of notice renouncing the right to seek review.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
OFFICE OF SPECIAL MASTERS

KELLY BUTLAND, as the Legal ) 
Representative of Her Minor Daughter, )
L.B., )
 )
      Petitioner, )
 ) No. 07-111V
v. ) Special Master Hamilton-Fieldman
 ) ECF
SECRETARY OF HEALTH AND )
HUMAN SERVICES, )
 )
      Respondent. )
 )

## STIPULATION

The parties hereby stipulate to the following matters:

1. On behalf of their daughter, L.B., petitioner filed a petition for vaccine compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10 to 34 (the "Vaccine Program"). The petition seeks compensation for injuries allegedly related to L.B.'s receipt of the Measles-Mumps-Rubella ("MMR") and Varicella vaccines, which vaccines are contained in the Vaccine Injury Table (the "Table"), 42 C.F.R. § 100.3 (a).

2. L.B. received her immunizations on December 22, 2004.

3. The vaccine was administered within the United States.

4. On June 19, 2009, then-Chief Special Master Campbell-Smith determined that petitioner is entitled to vaccine compensation after finding that L.B.'s Opsoclonus Myoclonus Syndrome ("OMS") was vaccine-related and that she experienced residual effects of this injury for more than six months.

5. Petitioner represents that there has been no prior award or settlement of a civil action for damages on behalf of L.B. as a result of her condition.

6. Respondent continues to maintain her contrary position, but will not seek review of the special master's determination of entitlement upon its memorialization as a reviewable decision.

7. The parties agree that a decision should be entered awarding the compensation described in paragraph 8 of this Stipulation.

8. As soon as practicable after an entry of judgment reflecting a decision consistent with the terms of this Stipulation, and after petitioner has filed an election to receive compensation pursuant to 42 U.S.C. § 300aa-21(a)(1), the Secretary of Health and Human Services will issue the following vaccine compensation payments:

   a. A lump sum of $437,534.71, which amount represents compensation for lost future earnings and pain and suffering ($425,000.00) and first year life care expenses ($12,534.71), in the form of a check payable to petitioner as guardian/conservator of the estate of L.B. for the benefit of L.B. No payment shall be made until petitioner provides respondent with documentation establishing that she has been appointed as the guardian/conservator of L.B.'s estate;

   b. A lump sum of $6,281.00, which amount represents compensation for past unreimbursable expenses, in the form of a check payable to petitioner, Kelly Butland;

   c. A lump sum of $13,034.00, which amount represents reimbursement of a lien for services provided to L.B., in the form of a check payable jointly to petitioner and

   > Holloway Credit Solutions, LLC
   > P.O. Box 230609,
   > Montgomery, AL 36123-5609
   > Attn: Ms. Lang

   Petitioner agrees to endorse the check to Holloway Credit Solutions, LLC.

  d. A lump sum of $6,210.00, which amount represents reimbursement of a lien for services provided to L.B., in the form of a check payable jointly to petitioner and

Children's Hospital
P.O. Box 2252
Birmingham, AL 35246-0095
Medical Reference No. 1237366

Petitioner agrees to endorse the check to Children's Hospital.

  e. An amount sufficient to purchase the annuity contract described in paragraph 10 below, paid to the life insurance company from which the annuity will be purchased (the "Life Insurance Company").

9. The Life Insurance Company must have a minimum of $250,000,000.00 capital and surplus, exclusive of any mandatory security valuation reserve. The Life Insurance Company must have one of the following ratings from two of the following rating organizations:

  a. A.M. Best Company: A++, A+, A+g, A+p, A+r, or A+s;

  b. Moody's Investor Service Claims Paying Rating: Aa3, Aa2, Aa1, or Aaa;

  c. Standard and Poor's Corporation Insurer Claims-Paying Ability Rating: AA-, AA, AA+, or AAA;

  d. Fitch Credit Rating Company, Insurance Company Claims Paying Ability Rating: AA-, AA, AA+, or AAA.

10. The Secretary of Health and Human Services agrees to purchase an annuity contract from the Life Insurance Company for the benefit of L.B., pursuant to which the Life Insurance Company will agree to make payments periodically to petitioner, as the court- appointed guardian/conservator of the estate of L.B. for the following items of compensation:

  a. For future unreimbursable BCBS maximum out-of-pocket expenses ("MOP") (including deductible), Medicare Supplement F, Primary Care, Neurology, Ophthalmology, Trazodone, Dexamethasone, and Clonazepam expenses, beginning on the first anniversary of the date of judgment, an annual amount of $6,388.50 to be paid up to the anniversary of the date of judgment in year 2026. Then, beginning on the anniversary of the date of judgment in year 2026, an annual amount of $6,336.00 to be paid up to the anniversary of the date of judgment in year 2029. Thereafter, beginning on the anniversary of the date of judgment in year 2068, an annual amount of $2,332.68 to

3

be paid for the remainder of L.B.'s life, all amounts increasing at the rate of five percent (5%), compounded annually from the date of judgment.

b. For future unreimbursable Affordable Care Act ("ACA") Premium expenses, beginning on the anniversary of the date of judgment in year 2029, an annual amount of $2,947.68 to be paid up to the anniversary of the date of judgment in year 2030. Then, beginning on the anniversary of the date of judgment in year 2030, an annual amount of $3,007.68 to be paid up to the anniversary of the date of judgment in year 2031. Then, beginning on the anniversary of the date of judgment in year 2031, an annual amount of $3,076.92 to be paid up to the anniversary of the date of judgment in year 2032. Then, beginning on the anniversary of the date of judgment in year 2032, an annual amount of $3,191.40 to be paid up to the anniversary of the date of judgment in year 2033. Then, beginning on the anniversary of the date of judgment in year 2033, an annual amount of $3,285.36 to be paid up to the anniversary of the date of judgment in year 2034. Then, beginning on the anniversary of the date of judgment in year 2034, an annual amount of $3,332.28 to be paid up to the anniversary of the date of judgment in year 2035. Then, beginning on the anniversary of the date of judgment in year 2035, an annual amount of $3,402.84 to be paid up to the anniversary of the date of judgment in year 2036. Then, beginning on the anniversary of the date of judgment in year 2036, an annual amount of $3,473.28 to be paid up to the anniversary of the date of judgment in year 2037. Then, beginning on the anniversary of the date of judgment in year 2037, an annual amount of $3,517.32 to be paid up to the anniversary of the date of judgment in year 2038. Then, beginning on the anniversary of the date of judgment in year 2038, an annual amount of $3,564.24 to be paid up to the anniversary of the date of judgment in year 2039. Then, beginning on the anniversary of the date of judgment in year 2039, an annual amount of $3,587.76 to be paid up to the anniversary of the date of judgment in year 2040. Then, beginning on the anniversary of the date of judgment in year 2040, an annual amount of $3,611.28 to be paid up to the anniversary of the date of judgment in year 2041. Then, beginning on the anniversary of the date of judgment in year 2041, an annual amount of $3,634.68 to be paid up to the anniversary of the date of judgment in year 2042. Then, beginning on the anniversary of the date of judgment in year 2042, an annual amount of $3,658.20 to be paid up to the anniversary of the date of judgment in year 2043. Then, beginning on the anniversary of the date of judgment in year 2043, an annual amount of $3,705.24 to be paid up to the anniversary of the date of judgment in year 2044. Then, beginning on the anniversary of the date of judgment in year 2044, an annual amount of $3,752.16 to be paid up to the anniversary of the date of judgment in year 2045. Then, beginning on the anniversary of the date of judgment in year 2045, an annual amount of $3,822.60 to be paid up to the anniversary of the date of judgment in year 2046. Then, beginning on the anniversary of the date of judgment in year 2046, an annual amount of $3,890.16 to be paid up to the anniversary of the date of judgment in year 2047. Then, beginning on the anniversary of the date of judgment in year 2047, an annual amount of $3,984.12 to be paid up to the anniversary of the date of judgment in year 2048. Then, beginning on the anniversary of the date of judgment in year 2048, an annual amount of $4,101.60 to be paid up to the anniversary of the date of judgment in year 2049. Then, beginning on the anniversary of the date of judgment in year 2049, an annual amount of $4,239.60 to be paid up to the anniversary of the date of judgment in year 2050. Then,

beginning on the anniversary of the date of judgment in year 2050, an annual amount of $4,404.00 to be paid up to the anniversary of the date of judgment in year 2051. Then, beginning on the anniversary of the date of judgment in year 2051, an annual amount of $4,588.92 to be paid up to the anniversary of the date of judgment in year 2052. Then, beginning on the anniversary of the date of judgment in year 2052, an annual amount of $4,800.36 to be paid up to the anniversary of the date of judgment in year 2053. Then, beginning on the anniversary of the date of judgment in year 2053, an annual amount of $5,008.80 to be paid up to the anniversary of the date of judgment in year 2054. Then, beginning on the anniversary of the date of judgment in year 2054, an annual amount of $5,243.64 to be paid up to the anniversary of the date of judgment in year 2055. Then, beginning on the anniversary of the date of judgment in year 2055, an annual amount of $5,475.60 to be paid up to the anniversary of the date of judgment in year 2056. Then, beginning on the anniversary of the date of judgment in year 2056, an annual amount of $5,730.96 to be paid up to the anniversary of the date of judgment in year 2057. Then, beginning on the anniversary of the date of judgment in year 2057, an annual amount of $5,989.44 to be paid up to the anniversary of the date of judgment in year 2058. Then, beginning on the anniversary of the date of judgment in year 2058, an annual amount of $6,268.32 to be paid up to the anniversary of the date of judgment in year 2059. Then, beginning on the anniversary of the date of judgment in year 2059, an annual amount of $6,547.20 to be paid up to the anniversary of the date of judgment in year 2060. Then, beginning on the anniversary of the date of judgment in year 2060, an annual amount of $6,849.60 to be paid up to the anniversary of the date of judgment in year 2061. Then, beginning on the anniversary of the date of judgment in year 2061, an annual amount of $7,155.00 to be paid up to the anniversary of the date of judgment in year 2062. Then, beginning on the anniversary of the date of judgment in year 2062, an annual amount of $7,480.80 to be paid up to the anniversary of the date of judgment in year 2063. Then, beginning on the anniversary of the date of judgment in year 2063, an annual amount of $7,642.32 to be paid up to the anniversary of the date of judgment in year 2064. Then, beginning on the anniversary of the date of judgment in year 2064, an annual amount of $7,968.24 to be paid up to the anniversary of the date of judgment in year 2065. Then, beginning on the anniversary of the date of judgment in year 2065, an annual amount of $8,250.12 to be paid up to the anniversary of the date of judgment in year 2066. Then, beginning on the anniversary of the date of judgment in year 2066, an annual amount of $8,435.04 to be paid up to the anniversary of the date of judgment in year 2067. Then, beginning on the anniversary of the date of judgment in year 2067, an annual amount of $8,667.00 to be paid up to the anniversary of the date of judgment in year 2068, all amounts increasing at the rate of five percent (5%), compounded annually from the date of judgment.

c. For future unreimbursable ACA MOP (including deductible) expenses, beginning on the anniversary of the date of judgment in year 2029, an annual amount of $3,000.00 to be paid up to the anniversary of the date of judgment in year 2068, increasing at the rate of five percent (5%), compounded annually from the date of judgment.

d. For future unreimbursable Zantac, Memory and Organization Aid expenses, beginning on the first anniversary of the date of judgment, an annual amount of $104.86 to be paid

for the remainder of L.B.'s life, increasing at the rate of four percent (4%), compounded annually from the date of judgment.

e. For future unreimbursable Case Management expenses, beginning on the first anniversary of the date of judgment, an annual amount of $1,260.00 to be paid up to the anniversary of the date of judgment in year 2025, increasing at the rate of four percent (4%), compounded annually from the date of judgment.

f. For future unreimbursable Tutoring and Adaptive Educational Software expenses, beginning on the first anniversary of the date of judgment, an annual amount of $5,172.00 to be paid up to the anniversary of the date of judgment in year 2022. Then, beginning on the anniversary of the date of judgment in year 2022, an annual amount of $3,000.00 to be paid up to the anniversary of the date of judgment in year 2027, all amounts increasing at the rate of four percent (4%), compounded annually from the date of judgment.

g. For future unreimbursable Vocational/Rehabilitation Counseling expenses, beginning on the anniversary of the date of judgment in year 2025, an annual amount of $1,500.00 to be paid up to the anniversary of the date of judgment in year 2026. Then, beginning on the anniversary of the date of judgment in year 2028, annual amount of $2,000.00 to be paid up to the anniversary of the date of judgment in year 2034, all amounts increasing at the rate of four percent (4%), compounded annually from the date of judgment.

At the sole discretion of the Secretary of Health and Human Services, the periodic payments may be provided to the petitioner in monthly, quarterly, annual or other installments. The "annual amounts" set forth above describe only the total yearly sum to be paid to the petitioner and do not require that the payment be made in one annual installment. The petitioner will continue to receive the annuity payments from the Life Insurance Company only so long as L.B. is alive at the time that a particular payment is due. Written notice to the Secretary of Health and Human Services, the trustee, and the Life Insurance Company shall be provided within twenty (20) days of L.B.'s death.

11. The annuity contract will be owned solely and exclusively by the Secretary of Health and Human Services and will be purchased as soon as practicable following the entry of a judgment in conformity with this Stipulation. The parties stipulate and agree that the Secretary of Health and Human Services and the United States of America are not responsible for the

payment of any sums other than the amounts set forth in paragraph 8 herein and the amounts awarded pursuant to paragraph 12 herein, and that they do not guarantee or insure any of the future annuity payments. Upon the purchase of the annuity contract, the Secretary of Health and Human Services and the United States of America are released from any and all obligations with respect to future annuity payments.

12. As soon as practicable after the entry of judgment on entitlement in this case, and after petitioner has filed both a proper and timely election to receive compensation pursuant to 42 U.S.C. § 300aa-21(a)(1), and an application, the parties will submit to further proceedings before the special master to award reasonable attorneys' fees and costs incurred in proceeding upon this petition.

13. Petitioner and her attorney represent that compensation to be provided pursuant to this Stipulation is not for any items or services for which the Program is not primarily liable under 42 U.S.C. § 300aa-15(g), to the extent that payment has been made or can reasonably be expected to be made under any State compensation programs, insurance policies, Federal or State health benefits programs (other than Title XIX of the Social Security Act (42 U.S.C. § 1396 et seq.)), or by entities that provide health services on a pre-paid basis.

14. Payments made pursuant to paragraph 8 and any amounts awarded pursuant to paragraph 12 of this Stipulation will be made in accordance with 42 U.S.C. § 300aa-15(i), subject to the availability of sufficient statutory funds.

15. The parties and their attorneys further agree and stipulate that, except for any award for attorneys' fees and litigation costs and past unreimbursed expenses, the money provided pursuant to this Stipulation will be used solely for the benefit of L.B. as contemplated by a strict

construction of 42 U.S.C. §300aa-15(a) and (d), and subject to the conditions of 42 U.S.C. § 300aa-15(g) and (h).

16. Petitioner represents that she presently is, or within 90 days of the date of judgment will become, duly authorized to serve as guardian/conservator of L.B.'s estate under the laws of the State of Alabama. No payments pursuant to this Stipulation shall be made until petitioner provides the Secretary with documentation establishing her appointment as guardian/ conservator of L.B.'s estate. If petitioner is not authorized by a court of competent jurisdiction to serve as guardian/conservator of the estate of L.B. at the time a payment pursuant to this Stipulation is to be made, any such payment shall be paid to the party or parties appointed by a court of competent jurisdiction to serve as guardian(s)/conservator(s) of the estate of L.B. upon submission of written documentation of such appointment to the Secretary.

17. In return for the payments described in paragraphs 8 and 12, petitioner, in her individual capacity and as legal representative of L.B., on behalf of herself, L.B., and L.B.'s heirs, executors, administrators, successors or assigns, does forever irrevocably and unconditionally release, acquit and discharge the United States and the Secretary of Health and Human Services from any and all actions or causes of action (including agreements, judgments, claims, damages, loss of services, expenses and all demands of whatever kind or nature) that have been brought, could have been brought, or could be timely brought in the Court of Federal Claims, under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300 aa-10 et seq., on account of, or in any way growing out of, any and all known or unknown, suspected or unsuspected personal injuries to or death of L.B. resulting from, or alleged to have resulted from, any of the vaccinations administered on December 22, 2004, as alleged by petitioner in a petition

8

for vaccine compensation filed on or about February 16, 2007, in the United States Court of Federal Claims as petition No. 07-111V.

18. If L.B. should die prior to entry of judgment, this agreement shall be voidable upon proper notice to the Court on behalf of either or both of the parties.

19. If the special master fails to issue a decision in complete conformity with the terms of this Stipulation or if the Court of Federal Claims fails to enter judgment in conformity with a decision that is in complete conformity with the terms of this Stipulation, then the parties' settlement and this Stipulation shall be voidable at the sole discretion of either party.

20. This Stipulation expresses a full and complete negotiated settlement of liability and damages claimed under the National Childhood Vaccine Injury Act of 1986, as amended, except as otherwise noted in paragraph 12 above. There is absolutely no agreement on the part of the parties hereto to make any payment or to do any act or thing other than is herein expressly stated and clearly agreed to. The parties further agree and understand that the award described in this Stipulation may reflect a compromise of the parties' respective positions as to liability and/or amount of damages, and further, that a change in the nature of the injury or condition or in the items of compensation sought, is not grounds to modify or revise this agreement.

21. Petitioner hereby authorizes respondent to disclose documents filed by petitioner in this case consistent with the Privacy Act and the routine uses described in the National Vaccine Injury Compensation Program System of Records, No. 09-15-0056.

22. All rights and obligations of petitioner hereunder shall apply equally to petitioner's heirs, executors, administrators, successors, and/or assigns as legal representatives of L.B.

END OF STIPULATION

Respectfully submitted,

PETITIONER:

*Kelly Butland*
KELLY BUTLAND

ATTORNEY OF RECORD FOR PETITIONER:

*Curtis Webb*
CURTIS R. WEBB, ESQ.
WEBB, WEBB, & GUERRY
Attorneys at Law
155 2nd Avenue North
P.O. Box 1768
Twin Falls, Idaho 83303-1768
(208) 734-1616

AUTHORIZED REPRSENTATIVE OF THE ATTORNEY GENERAL:

*Vincent J. Matanoski*
VINCENT J. MATANOSKI
Deputy Director
Torts Branch
Civil Division
U.S. Department of Justice
P.O. Box 146
Benjamin Franklin Station
Washington, DC 20044-0146

AUTHORIZED REPRESENTATIVE OF THE SECRETARY OF HEALTH AND HUMAN SERVICES:

*[signature] for*
A. MELISSA HOUSTON, M.D., M.P.H., FAAP
Director, Division of Injury Compensation Programs (DICP)
Healthcare Systems Bureau
U.S. Department of Health and Human Services
5600 Fishers Lane
Parklawn Building, Mail Stop 11C-26
Rockville, MD 20857

ATTORNEY OF RECORD FOR RESPONDENT:

*Traci R. Patton*
TRACI R. PATTON
Senior Trial Attorney
Torts Branch
Civil Division
U.S. Department of Justice
P.O. Box 146
Benjamin Franklin Station
Washington, DC 20044-0146
Tel: (202) 353-1589

Dated: 3-4-2015